IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES WILLIAMSON, FREDIA WILLIAMSON, | ) ) ) | |
| Plaintiffs, | ) ) ) | No. 6:19-03089-CV-RK |
| v. | ) ) | |
| WYNDHAM VACATION OWNERSHIP, INC., WYNDHAM VACATION RESORTS, INC., | ) ) ) ) | |
| Defendants. | ) | |

## ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION

Before the Court is Defendants' Wyndham Vacation Ownership, Inc. and Wyndham Vacation Resorts, Inc. ("Defendants") Motion to Compel Arbitration ("the Motion"). (Doc. 6.) The Motion is fully briefed. (Docs. 7, 9, 14.) After careful consideration and for the reasons below, the Motion is **GRANTED**, and this case is hereby **STAYED**.

### Background

On January 10, 2019, Plaintiffs filed their Petition against Defendants in the Circuit Court of Taney County, Missouri. *James Williamson and Fredia Williamson v. Wyndham Vacation Ownership, Inc. and Wyndham Vacation Resorts, Inc.*, Case No.: 1946-CC00006. On March 1, 2019, Defendants removed this action to this Court on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).[1]

The Complaint provides the following allegations. Plaintiffs entered into two separate timeshare agreements with Defendants, and in the execution of these agreements, Defendants made false representations to Plaintiffs to convince Plaintiffs to purchase timeshare interests from Defendants. On October 15, 2017, Plaintiffs entered into a ClubWyndham® Access Vacation Ownership Plan Retail Installment Contract Purchase and Security Agreement – Contract No. 00020-1736444 ("Contract I"). On July 9, 2018, Plaintiffs entered into a ClubWyndham® Access Vacation Ownership Plan Retail Installment Contract Purchase and Security Agreement – Contract

---

[1] On March 20, 2019, Plaintiffs' filed a Motion to Remand. (Doc. 11.) On May 6, 2019, the Court denied Plaintiff's Motion to Remand. (Doc. 24.)

No. 19-1813625 ("Contract II"). Also on July 9, 2018, Plaintiffs traded in Contract I for Contract II, applying the equity from Contract I as a down payment for Contract II. After this transaction, Contract II became the operative contract as Contract I was subsumed within Contract II. The Complaint asserts two cause of action against Defendants: (1) violation of the Missouri Merchandising Practices Act ("MMPA"), RSMo. § 407.025[2]; and (2) fraudulent misrepresentation[3] arising from Defendants' alleged deceptive and coercive behavior during contract formation and execution. Contract II contains the following arbitration provision:

> **PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT CERTAIN DISPUTES MUST BE RESOLVED BY BINDING ARBITRATION. IN ARBITRATION YOU GIVE UP THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES AND ARE SUBJECT TO VERY LIMITED REVIEW.**

> 33. DISPUTE RESOLUTION/ARBITRATION: Any Disputes between the Parties shall be resolved as follows:

> (a) **Definition of Disputes:** The Parties agree that any dispute, claim, suit demand or controversy arising out of or relating to this Agreement (any "*Dispute*") shall be determined exclusively and finally by individual arbitration, except as specified below. "Dispute" includes, without limitation, any claims regarding any breach, termination, enforcement, interpretation or validity of this Agreement, ***and claims arising out of or related to the marketing, purchase, and/or use of Owner's Ownership, Owner's use of Seller's properties,*** and/or Owner's participation, in any activities/events sponsored, organized or made available by Seller or any of its affiliates.

(Doc. 7-2, ¶ 33(a) (bolded italics added)).

---

[2] "The elements of a claim under the MMPA are: (1) the purchase of a good or service, (2) for personal or household purposes; and (3) an ascertainable loss of money or property, (4) resulting from or caused by the use or employment of another person of a method, act, or practice declared unlawful under the MMPA." *Bratton v. Hershey Co.*, 2018 U.S. Dist. LEXIS 26031, at *5 (W.D. Mo. Feb. 16, 2018).

[3] "The elements of fraudulent misrepresentation are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury." *Inspired Pharma Solutions, LLC v. 5mrx LLC*, 2018 U.S. Dist. LEXIS 16450, at *5-6 (E.D. Mo. Feb. 1, 2018).

The parties do not dispute that Contract II contained a clause providing that any dispute arising out of the agreement shall be subject to arbitration administered by the American Arbitration Association ("AAA") in Orange County, Florida.

## Discussion

Defendants argue Contract II contains a valid arbitration agreement and the terms of the agreement fall within the scope of arbitration; therefore, arbitration is proper. Plaintiffs argue: (1) the arbitration clause is unenforceable because Contract II was procured by fraud, and (2) Plaintiffs' claims are independent torts that fall outside the scope of the arbitration clause. To determine whether this case should be sent to arbitration, the Court must first determine whether a valid arbitration agreement exists. If a valid arbitration agreement exists, the Court must then determine whether the dispute between the parties falls within the terms of the arbitration agreement.

### I.     Whether a Valid Arbitration Agreements Exists

Plaintiffs allege Defendants fraudulently induced Plaintiffs into purchasing timeshare contracts; therefore, the arbitration clause is unenforceable. "[T]he Federal Arbitration Act requires a claim of fraud in the inducement of the entire contract to be submitted to arbitration." *Creson v. Quickprint of America, Inc.*, 558 F. Supp. 984, 987 (W.D. Mo. Jan. 27, 1983). "Only when there is a claim of fraud in the arbitration clause itself is a court to intervene." *Id.* Here, Plaintiffs' Complaint alleges fraud in the inducement of the entire timeshare contract, not fraud in the inducement of the arbitration clause specifically. Therefore, Plaintiffs' claims for fraudulent inducement are proper for arbitration. *See PR Group, LLC v. Windmill Int'l, Ltd.*, 2016 WL 3033617, at *6 (W.D. Mo. Feb. 1, 2016) ("[t]he defense of fraud can defeat the arbitration agreement only if the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the making of the agreement to arbitrate . . . [b]ut where the claim was one of fraud in the inducement of the contract generally, *Prima Paint* [*Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)] declared that the issue was for the arbitrator") (internal citations omitted).

### II.     Whether the Parties' Dispute Falls within the Arbitration Agreement

"At the very least, for a tort claim to be subject to an arbitration clause, it must raise some issue the resolution of which requires reference to or construction of some portion of the parties' contract." *Nw. Chrysler-Plymouth, Inc. v. DaimlerChrysler Corp.*, 168 S.W.3d 693, 696 (Mo. App. 2005). "Where a tort claim is independent of the contract terms and does not require

reference to the underlying contract, arbitration is not compelled." *Id.* "The relationship between the tort claim and the contract is not satisfied simply because the dispute would not have arisen absent the existence of the contract." *Greenwood v. Sherfield*, 895 S.W.2d 169, 174 (Mo. App. 1995. Plaintiffs argue that they are not bound by the arbitration agreement because their Complaint alleges claims that can be resolved without reference to Contract II. Defendants argue Plaintiffs' claims require reference to or construction of Contract II.

Plaintiffs' claims require reference to or construction of Contract II. The arbitration clause states it pertains to all disputes "arising out of or relating to this Agreement" as well as the "marketing, purchase and/or use" of Plaintiffs' ownership in Club Wyndham® generally. (Doc. 7-2, ¶ 33(a)). Plaintiffs allege Defendants "employ[ed] the unfair practice of imposing extremely short time and/or high pressure sales tactics on Plaintiffs' purchasing decision, such as requiring a decision before they could leave the sale meeting or facility, thereby creating an artificial sense of urgency." (Doc. 1-1, ¶ 26a.) Contract II's language allowed Plaintiffs a "nonwaivable right to cancel," giving Plaintiffs a full fifteen days to cancel their agreement. (Doc. 7-2, ¶ 45.) Next, Plaintiffs allege they were told they could travel and use the timeshare anytime but were denied this access. (Doc. 1-1, ¶ 26c.) Contract II provides Plaintiffs' timeshare rights as to accommodations and location usage. (Doc.7-2, § § B, C.) Finally, Plaintiffs allege they were told the timeshare's investment value would increase over time, but its investment value did not increase. (Doc. 1-1, ¶ 26g.) Contract II provides the purpose of the timeshare is for recreational and social use, not for financial gain. (Doc. 7-2, ¶ 12.) Plaintiffs' claims concern the marketing, purchase, and use of the timeshare; therefore, Plaintiffs' claims require reference to the contract.[4]

### III.  Whether a Stay is Appropriate

Defendants argue that the case should be dismissed if the Motion is granted. As a general rule, the FAA requires courts to stay an action pending arbitration rather than dismissing a case.

---

[4] Plaintiffs rely on *Riley v. Lucas Lofts Investors, LLC* in support of their position, but the Court finds *Riley* distinguishable. 412 S.W.3d 285 (Mo. App. 2013). In *Riley*, the dispute at issue arose from the plaintiff's purchase of the defendants' condominiums. *Id.* at 4. The *Riley* Court denied the defendants' motion to compel arbitration because the claims did not raise any issues that required reference to the contract for sale of the condominiums. *Id.* at 12. *Riley* is distinguishable because the dispute concerned the repair of the building's roof, and this roof repair was entirely separate and was not a part of the plaintiffs' condominium contract. Therefore, the roof dispute did not require reference to or construction of the contract to purchase condominiums. *Id.* Unlike in *Riley*, here, the resolution of Plaintiffs' claims require reference to Contract II for resolution.

*Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011). Section 3 of the FAA states that the case "shall" be stayed "upon any issue referable to arbitration under an agreement in writing for such arbitration." There is an exception to this general rule. An action that is sent to arbitration may be dismissed instead of stayed if it is clear the entire controversy between the parties will be resolved in the arbitration. *Green*, 653 F.3d at 769 769-770. The Court is not fully convinced that no issue will remain after arbitration. Therefore, the Court will stay this case in accordance with 9 U.S.C. § 3.

## Conclusion

After careful consideration and for the reasons above, the Motion is **GRANTED**, and this matter shall be sent to arbitration. The arbitration shall be administered by the American Arbitration Association ("AAA") in Orange County, Florida. Accordingly, this case is **STAYED** until arbitration proceedings are complete. The parties are directed to file status reports with the Court every one-hundred twenty (120) days and within ten (10) days after arbitration is concluded.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: May 15, 2019